AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court
## For The District of Columbia

**UNITED STATES OF AMERICA**

v.

**WALTER RAFEAL VELIZ**

**CRIMINAL COMPLAINT**

CASE NUMBER:

**(Name and Address of Defendant)**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about **July 1, 2005 through February 28, 2007** in **WASHINGTON** county, in the _____ District of **COLUMBIA** defendant(s) did, (Track Statutory Language of Offense)

knowingly and willfully combine, conspire, confederate an agree together with persons both known as unknown to unlawfully, knowingly, and intentionally distribute and a possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II, narcotic drug controlled substance, and the amount of said mixture and substance was 5 kilograms or more, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii).

in violation of Title **21** United States Code, Section(s) **846**.

I further state that I am **SPECIAL AGENT TIMOTHY J. ERVIN**, and that this complaint is based on the following facts:

**SEE ATTACHED STATEMENT OF FACTS**

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

_____
Signature of Complainant
**SPECIAL AGENT TIMOTHY J. ERVIN**
**FEDERAL BUREAU OF INVESTIGATION**

Sworn to before me and subscribed in my presence,

_____    at    **Washington, D.C.**
Date                                                                              City and State

_____        _____
Name & Title of Judicial Officer                    Signature of Judicial Officer

**AFFIDAVIT**

I. **THE INVESTIGATION**

1. This investigation was initiated by the FBI and MPD in June, 2005, based upon information received from a cooperating witness (hereinafter referred to as "CW-1"), who has provided truthful information on numerous occasions about drug traffickers and has never provided any false information. CW-1 provided specific information regarding a large-scale Guatemalan narcotics trafficking organization operating in Guatemala, Florida, Maryland and Washington, D.C. It was determined the leader of the organization was JOSE NAPOLEON VILLAGRAN-SOLIS, also known as "NAPO," in Chiquimula, Guatemala. It was also determined JOSE RAUL SANDOVAL, also known as "VIEJO," was a large-scale narcotics distributor in the Washington Metropolitan Area, who was supplied with cocaine by VILLAGRAN. SANDOVAL supplied large quantities of cocaine to WALTER RAFAEL VELIZ, also known as "CHINO," in the Washington Metropolitan Area.

2. A second cooperating witness ("CW-2") was introduced by CW-1 to SANDOVAL. After the introduction, CW-2 was able to make a controlled purchase of cocaine from SANDOVAL in Washington, D.C. CW-2 is a source of proven reliability. CW-2 has provided information in the past leading to three narcotics arrests and the seizure of large amounts of cocaine.

3. In early July of 2005, CW-1 indicated it had established a close relationship with a large-scale Guatemalan cocaine distributor named RAUL, also known by the nickname "VIEJO" [later identified as JOSE RAUL SANDOVAL]. CW-1 also had learned SANDOVAL was supplied with cocaine by another Guatemalan male known by the nickname "NAPO" [later identified as JOSE

NAPOLEON VILLAGRAN-SOLIS], who resides in Guatemala. NAPO arranges for the transportation of multiple kilograms of cocaine into the United States for distribution.

4. SANDOVAL regularly received cocaine from VILLAGRAN by two different methods. Approximately once a week, a courier would drive from south Florida with four kilograms of cocaine. The courier would meet SANDOVAL in the Washington Metropolitan area and give SANDOVAL the four kilograms. Additionally, approximately once a week, SANDOVAL would receive two kilograms of cocaine concealed in a Federal Express package sent by one of VILLAGRAN's associates in California.

5. On July 11, 2005, Federal Express employees advised the FBI that RAUL SANDOVAL had received a package weighing approximately 17 pounds at xxx xxxxxxxx xxxx, xxxxxxxxx xx, xxxxxx xxxxxx, xxxxxxxx. The package was sent from an address in Los Angeles, California.

6. On July 18, 2005, CW-1 advised that it and SANDOVAL were leaving soon to meet the courier from Florida. Surveillance was initiated on CW-1 and SANDOVAL a short time later, and they were followed to the parking lot of a grocery store just off the Interstate 95 Calverton exit in suburban Maryland. In that parking lot, at approximately 10:37 a.m., SANDOVAL and CW-1 met with a Guatemalan male. SANDOVAL was observed and videotaped by the affiant removing a large bag from that male's vehicle and placing it in the vehicle driven by CW-1. After SANDOVAL returned with the bag to his apartment, CW-1 again spoke with the affiant and advised that SANDOVAL had received four kilograms of cocaine which were concealed in the wooden poles of a hammock.

7. During the afternoon of July 18, 2005, CW-1 indicated SANDOVAL had told CW-1

that he was preparing to distribute a portion of the cocaine to his customers, and he had broken open one of the wooden poles in order to retrieve the cocaine. CW-1 was able to retrieve the broken wooden poles and turn them over to the FBI. White residue concealed inside the poles was tested by the DEA Mid-Atlantic Laboratory and determined to be cocaine.

8. On July 19, 2005, Federal Express employees advised the FBI that RAUL SANDOVAL had received a package weighing approximately 15 pounds at xxx Xxxxxxxx xxxx, xxxxxxxxx xx, xxxxxx xxxxxx, xxxxxxxx. The package was sent from an address in Los Angeles, California. CW-1 was told by SANDOVAL that he had received two kilograms of cocaine that day in a Federal Express package.

9. On July 20, 2005, CW-1 contacted the FBI and advised that SANDOVAL would soon be going to meet one of his customers for a narcotics transaction on Apache Street, Adelphi, Maryland. Surveillance was initiated, and SANDOVAL was observed a short time later arriving with CW-1 in a Honda Accord on Apache Street. At approximately 11:42 a.m., SANDOVAL exited that vehicle carrying something in his hand, and entered a black Dodge Magnum with Maryland tag xxx xxx, which had just parked next to the Accord. SANDOVAL exited the Magnum after a few minutes and returned to the Accord. Both vehicles then drove out of the area. CW-1 later informed the FBI that "CHINO" was the driver of the Magnum and that SANDOVAL had sold CHINO 500 grams of cocaine for $10,000 in cash. CW-1 later identified a Maryland driver's license photo of WALTER RAFAEL VELIZ as being identical to CHINO. CW-1 has personally met CHINO in the past and knows him to be the driver of that Magnum. CW-1 also observed SANDOVAL exit the Honda Accord with cocaine, enter the Magnum, then return to the Honda Accord with a large amount of U.S. currency.

10. On July 20, 2005, CW-2 met with SANDOVAL and CW-1 in a parking lot at 6500 Georgia Avenue, N.W., Washington, D.C. CW-1 introduced CW-2 to SANDOVAL. CW-2 then purchased a quantity of cocaine from SANDOVAL for $5,500 in cash. MPD surveillance observed the meeting and transaction between CW-2 and SANDOVAL. CW-2 received the cocaine from SANDOVAL in a Federal Express box. Although it is not known for certain, your affiant believes that this box may have been the same Federal Express box in which SANDOVAL had received two kilograms of cocaine on July 19, 2005. This is because only one day had passed between the time SANDOVAL received a Federal Express box and the day he sold narcotics in a Federal Express box.

11. After the transaction was completed, SANDOVAL paid CW-1 $300 in cash for brokering the transaction with CW-2. CW-1 returned those funds to MPD. MPD field-tested the substance purchased from SANDOVAL as being positive for the presence of cocaine, and noted it weighed approximately 314 grams. The substance was submitted to the DEA Mid-Atlantic Laboratory for quantitative and qualitative analysis.

12. On July 24, 2005, CW-1 contacted the FBI and advised that SANDOVAL would soon be going to meet one of his customers for a narcotics transaction on Apache Street in Adelphi, Maryland. Surveillance was established on Apache Street, and SANDOVAL was observed a short time later arriving with CW-1 in a Honda Accord. At approximately 3:46 p.m., SANDOVAL exited his vehicle carrying something in his hand, and entered a black Dodge Magnum with Maryland tag xxx xxx, which had just parked next to the Accord. SANDOVAL exited the Magnum after a few minutes and returned to the Accord. Both vehicles then drove out of the area. CW-1 later informed the FBI that SANDOVAL had sold CHINO [WALTER VELIZ] a kilogram of cocaine. CHINO paid SANDOVAL $10,000 in cash, which is the price for 500 grams, and SANDOVAL "fronted"

CHINO the remainder of the cocaine. A review of airtime records for SANDOVAL's cellular telephone revealed that number participated in six calls with the telephone number used by CHINO, 202-386-1406. The time of those calls was between 1:05 p.m. and 3:40 p.m.

13.    On July 26, 2005, CW-1 contacted the FBI and advised that SANDOVAL would soon be going to meet WALTER VELIZ, also known as "CHINO," for a narcotics transaction on Apache Street in Adelphi, Maryland. SANDOVAL told CW-1 that SANDOVAL was going to sell CHINO a kilogram of cocaine for $19,000 in cash. Surveillance was established on Apache Street, and SANDOVAL was observed a short time later arriving alone in a Honda Accord. At approximately 6:00 p.m., SANDOVAL exited his vehicle carrying something in his hand, and entered a black Dodge Magnum with Maryland tag xxx xxx, which had just parked next to the Accord. SANDOVAL exited the Magnum after a few minutes and returned to the Accord. Both vehicles then drove out of the area. A review of airtime records for SANDOVAL's cellular telephone revealed that number participated in seven calls with the telephone number used by CHINO, 202-386-1406. The time of those calls was between 4:48 p.m. and 5:57 p.m.

14.    On July 27, 2005, SANDOVAL told CW-1 he had received another Federal Express package containing two kilograms of cocaine. CW-1 obtained the airbill from the package, and turned it over to the FBI. The sender of the package was listed as NORMA ESTRADA, xxx Xx Xxxxx Xxxxxx, xxx, Xxx Xxxxxxx, Xxxxxxxxxx. The recipient of the package was listed as RAUL SANDOVAL at xxx Xxxxxxx Xxxx, Xxxxxxxxx xx, Xxxxxx Xxxxxx, Xxxxxxxx.

15.    CW-1 was later able to obtain the package itself after SANDOVAL had extracted the cocaine. CW-1 turned the package over to the FBI. The package contained a large broken picture frame and a broken black face mask which appeared to designed to serve as a concealment device.

White residue found in the package was field-tested positive by the FBI for the presence of cocaine.

16. On July 31, 2005, CW-1 contacted the FBI during the morning hours to advise that SANDOVAL told CW-1 he had just returned to his apartment complex after meeting with the courier from Florida. SANDOVAL said the courier had given him nine large candles that concealed four kilograms of cocaine. CW-1 saw the candles in SANDOVAL's apartment.

17. On August 9, 2005, with the cooperation of Federal Express employees, a package was located which was bound for delivery to RAUL SANDOVAL at xxx Xxxxxxxx Xxxx, Xxxxxxxxx xx, Xxxxxx Xxxxxx, Xxxxxxxx, xxxxx. The package was sent from Los Angeles on August 5, 2005.

Pursuant to a search warrant signed later that day by Magistrate Judge Alan Kay of the United States District Court for the District of Columbia, the package was opened and searched. It contained a large black mask which was set into a large frame. The black mask was removed from the frame and broken open. Concealed inside the mask were what appeared to be two kilograms of cocaine. The substance was submitted to the DEA Mid-Atlantic Laboratory and determined to be 1952 grams of cocaine with a purity of 77%. The items inside this package used to conceal the narcotics were very similar to the items inside the Federal Express package received by SANDOVAL on July 27, 2005.

18. On August 16, 2005, SANDOVAL was observed by FBI surveillance as he arrived on Apache Street in Adelphi, Maryland driving a rented Buick Rendezvous sports utility vehicle. At approximately 4:47 p.m., WALTER VELIZ, also known as "CHINO," arrived on Apache Street in the black Dodge Magnum and parked next to SANDOVAL's vehicle. VELIZ exited the vehicle and walked over to the Rendezvous to meet SANDOVAL. VELIZ was later observed returning to

his vehicle and driving out of the area. A review of airtime records for SANDOVAL's cellular telephone revealed that number participated in four calls with the telephone number used by CHINO, 202-386-1406. The time of those calls was between 4:21 p.m. and 4:39 p.m.

19. On September 9, 2005, U.S. District Court Judge James Robertson, District of Columbia, signed an order authorizing the interception of wire communications to and from two cellular telephones used by SANDOVAL. As a result of this authorization, monitoring of SANDOVAL's telephones began on September 9, 2005, and concluded on September 26, 2005. Several conversations regarding the planning, purchasing, and selling of cocaine were intercepted. Calls between SANDOVAL and VELIZ were intercepted, and are summarized below. The following interceptions are accompanied by characterizations which are based upon the affiant's and other agents' experience and training, in this and other investigations to date.

20. Activation #80, 9/11/05, at 8:31 p.m., SANDOVAL called VELIZ at 202-386-1406. SANDOVAL told VELIZ there's some, but he doesn't know if VELIZ wanted to try it. SANDOVAL says they wanted to cook it, but couldn't, and it still smells raw. VELIZ asked how much they had, and SANDOVAL said about 100 plus. VELIZ wanted to know if he could try it. SANDOVAL said that was why he was calling. They arranged to meet where they always meet. [SANDOVAL had over 100 grams of cocaine he believed to be of poor quality. VELIZ arranged to meet SANDOVAL so he could see the cocaine and determine if he wanted to buy it.]

21. Activation #83, 9/11/05, at 9:08 p.m., VELIZ called SANDOVAL from 202-386-1406. SANDOVAL said he was crossing Adelphi now, and would be there in a few minutes. VELIZ said he was parked and waiting for SANDOVAL. [It appeared VELIZ and SANDOVAL were about to meet again on Apache Street, which is quite close to Adelphi Road.]

**II.     ARREST**

22.     On February 28, 2007, at approximately 4:10 p.m., VELIZ was arrested by the FBI and MPD inside his apartment at xxxx Xxxxxxx Xxx, #xxxx, Xxxxxxx, Xxxxxxxx.  While clearing the apartment for officer safety, the following items were located in plain view and seized:

    a.     Charles Daly 12 gauge shotgun - serial # 3505370 - loaded with six rounds.

    b.     9mm Taurus pistol - serial # TVA45459 - loaded with nine rounds.

    c.     Two 9mm rounds.

    d.     A Tanita scale and a Rite Weight scale.

    e.     Sandwich bags and baking soda.

    f.     A Brinks safe - Firesafe model 5084-E - serial # 009399

23.     INGRID VERONICA MARTINEZ was also in the apartment at the time of VELIZ's arrest.   She advised that she was VELIZ's girlfriend, and had lived with him in the apartment for over a year.  MARTINEZ gave law enforcement officers written consent to search the apartment.  Numerous additional items were seized, some of which are detailed as follows:

    a.     Colt Anaconda .45 revolver - serial # MM37171 - loaded with six rounds.

    b.     Glock .45 magazine - loaded with 13 rounds.

    c.     Glock model 22 - .40 pistol - serial # CXA666 - loaded with 15 rounds

    d.     Glock model 21 - .45 pistol - serial # HMM668 - loaded with 13 rounds

    e.     Rossi .357 revolver - serial # 5355331 - loaded with six rounds

    f.     Taurus 9mm magazine - loaded with nine rounds

    g.     Two Pyrex bowls

MARTINEZ indicated she had seen VELIZ using the Pyrex bowls to cook a tan rock-like

substance in one of the microwaves in the apartment.

### III. CONCLUSION

24. Your affiant asserts that the facts contained within this affidavit establish probable cause to believe that the defendant, WALTER RAFAEL VELIZ, also known as "CHINO," is guilty of violating the laws of the United States, specifically 21 United States Code § 846. Therefore, in light of the circumstances and the evidence adduced from this investigation, your affiant respectfully requests that a Complaint issue for WALTER RAFAEL VELIZ charging him with the conspiracy to distribute and possess with intent to distribute more than five kilograms of a mixture and substance containing a detectable amount of cocaine in violation of 21 United States Code § 846.

_____
TIMOTHY J. ERVIN, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this \_\_\_\_ day of March, 2007.

_____
United States Magistrate Judge